IN THE UNITED STATES COURT OF APPEALS
FOR THE FORTH CIRCUIT

Jane Doe, a pseudonym,                )
                                      )
Appellant,                            )
                                      )
v.                                    )          Civil Action No. 22-CV-1978
                                      )
A.B.A. Accredited University          )
The American Bar Association (ABA)     )
US Department of Education            )
                                      )
Appellees.                            )

**APPELLANT'S OPENING BRIEF (REDACTED. -CORRECTED)**

**TABLE OF CONTENTS**

### Table of Contents

TABLE OF AUTHORITIES .................................................................. 2

QUESTIONS PRESENTED.................................................................. 3

PRELIMINARY STATEMENT ............................................................. 5

STATEMENT OF THE CASE ............................................................... 9

ARGUMENT.................................................................................11

  I.   STANDARD OF REVIEW ON APPEAL ....................................11
     A.  IN FORMA PAUPERIS STATUS ........................................11
     B.  TEMPORARY RESTRAINING ORDER ...............................11
     C.  DENIAL OF REQUEST TO PROCEED UNDER PSEUDONYM...........13

  II.  THE LOWER COURT ABUSED ITS DISCRETION IN DENYING IN FORMA PAUPERIS STATUS 14

  III. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING THE TEMPORARY RESTRAINING ORDER..........................................................15

  IV. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING PERMISSION TO PROCEED UNDER PSEUDONYM AND BY INDICATING THAT SEALED DOCUMENTS MAY BE UNSEALED UPON FURTHER FUTURE REVIEW................................22

*V.*  *THE LOWER COURT ABUSED ITS DISCRETION IN NOT ASSIGNING A PRESIDING JUDGE WHO IS UNAFFILIATED WITH THE DEFENDANT AMERICAN BAR ASSOCIATION, WHICH HAS PUBLICALLY ENDORSED THE PRESIDING JUDGE GIVING, AT MINIMUM, THE APPEARANCE OF BIAS* ...................................................................................................................**29**

*CONCLUSION* ....................................................................................................................**30**

## TABLE OF AUTHORITIES

**Federal Cases**

*Betts v. Rector & Visitors of Univ. of Virginia,*
939 F. Supp. 461 (W.D. Va. 1996) ................................................................16

*Candy H. v. Redemption Ranch,*
563 F.Supp. 505 (M.D.Ala.1983) ..................................................................24

█████████████████████ ...................................................................30

*Cohen v. Beneficial Industrial Loan Corp.,*
337 U.S. 541. ............................................................................................12, 13

*Cooter Gell v. Hart marx Corp.,*
496 U.S. 384 (1990) .......................................................................................14

██████████████████████ .........................................................17, 18

*Dillard v. Liberty Loan Corp.,*
626 F.2d 363 (4th Cir. 1980) ...................................................................11, 14

*Doe v. A Corp.,*
709 F.2d 1043, 1044 n. 1 (5th Cir.1983) ......................................................24

*Doe v. New York University,*
666 F.2d 761 (2d Cir.1981) ...........................................................................16

*Doe v. Salisbury Univ.,*
123 F. Supp. 3d 748, 770 (D. Md. 2015) .................................................13, 15

*Doe v. Stegall,*
653 F.2d 180 (5th Cir. 1981) .........................................................................13

*Doe v. The Rector & Visitors of George Mason Univ.,*
179 F. Supp. 3d 583  (E.D. Va. 2016) .....................................................15, 16

*Doe v. United Services Life Ins. Co.,*
123 F.R.D. 437 (S.D.N.Y. 1988) ..................................................................24

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006). .....................................................................................13

*Ellis v. United States,*
356 U.S. 674 (1958) .................................................................................11, 15

███████████████ ........................................................................30

*Graham v. Riddle,*
554 F.2d 133 (4th Cir. 1977) ...................................................................11, 14

2

██████████ ........................................................................................29

*Kinney v. Plymouth Rock Squab Co.,*
    236 U.S. 43 (1915) ................................................................11, 14

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .........................................................................14

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.,* AFL-CIO,
    473 U.S. 1301 (1985) ...................................................................12

*Pashby v. Delia,*
    709 F.3d 307, 319 (4th Cir. 2013) ...............................................12

*S.C. Progressive Network Educ. Fund v. Andino,*
    493 F. Supp. 3d 460, 466 (D.S.C. 2020) .....................................12

*Southern Methodist Univ. Ass'n. v. Wynne Jaffe,*
    599 F.2d 707 (5th Cir. 1979) ..................................................13, 24

*Staver v. Am. Bar Ass'n,*
    169 F. Supp. 2d 1372 (M.D. Fla. 2001) .......................................13

██████████ ........................................................................................30

*Taylor v. Nelson,*
    788 F.2d 220, 224 (4th Cir. 1986) ...............................................13

*United States v. Wood,*
    369 U.S. 850 ................................................................................12

*Will v. Calvert Fire Ins. Co.,*
    437 U.S. 655 (1978) .....................................................................14

██████████ ........................................................................................30

*Woods v. Wright,*
    334 F.2d 369 ................................................................................12

## QUESTIONS PRESENTED

(i)      Whether a district court abused its discretion in denying *in forma pauperis* status to the Appellant when Appellant has no income source, depleted savings, and debt exceeding the value of Appellant's assets, Appellant's current living expenses are being paid for from loans from family members, the primary relief sought is highly time sensitive, and when the United States Court of Appeals for the Fourth Circuit has already granted *in forma pauperis* status on substantially similar if not identical affidavits of the Appellant on Appeal.

(ii)     Whether a district court abused its discretion when it denied Appellant's request for a Temporary Restraining Order against a private law school to enjoin it from continuing to breach the parties' contract, when Appellant

3

stated facts sufficient to support the temporary relief including, among other facts, that the university not only (1) fraudulently induced the Appellant into enrolling into a program which it advertised as exclusively distance learning, but it also (2) breached its duty of good faith and fair dealing and to cooperate with Appellant to provide any reasonable alternatives for Appellant to finish the degree program on time after the university cancelled the distance learning mode of education with minimal notice to Appellant, and (3) engaged in ███████████████████, and when Appellant was counting on Federal Student Aid loans for living expenses throughout the semester and is left in dire straits due to the university's unilateral decision, and when Appellant is unable to relocate to New York due to ████████████████████████████, and when Appellant has already invested over $118,000 dollars to earn 39 of the 87 required credits (more than can be transferred to any A.B.A. accredited law school in the DC area), thereby forcing Appellant into a leave of absence and causing irreparable harm, including ████████████ caused by uncertainty over how or whether Appellant can complete the degree.

(iii)    Whether a district court abused its discretion when it denied Appellant's request for a temporary restraining order to enjoin the A.B.A. and/or the Department of Education, from enforcing a distance learning standard which limits the total hours of distance learning to one-third total credits, a standard which was adopted by A.B.A. under color of authority from DOE, when the standard is not rationally related to any governmental interest, and when said standard has been waived throughout COVID -19 pandemic demonstrating that the standard is either (1) unnecessary or that the (2) A.B.A. accredited law schools are granting degrees to students who are insufficiently educated (a preposterous alternative).

(iv)    Whether a district court  - acting through a judge who is a member of A.B.A abuses its discretion by adjudicating issues impacting members of that same A.B.A. organization, or exhibits a bias or an appearance of bias by denying Appellant basic and reasonable protections of the law to which Appellant is clearly entitled, including (1) to the requested TRO (or any alternative relief)

4

while the suit proceeds in order to preserve the status quo, (2) to *informa pauperis* status, (3) to proceed under pseudonym, and (4) without risk of sensitive information becoming unsealed upon a later review of that issue, when such relief would come at no cost or disadvantage to the university, A.B.A. or D.O.E., but instead - causes Appellant to miss at least an entire semester of law school for no good reason whatsoever, to incur delays associated with the denial of IFP status and the obvious risks associated with the denial of the request to proceed under pseudonym, and when the court apparently intends to reveal Appellant's true name regardless of whether or not Appellant chooses to proceed, which may not be desirable in the event that the appeal is resolved unfavorably.

## PRELIMINARY STATEMENT

The Appellant qualifies for *in forma pauperis status*, for a Temporary Restraining Order against the Appellees to allow Appellant to continue in the law program preserving the status quo while the case progresses, to proceed under pseudonym and with sensitive information sealed, in proceeding presided over by a judge without bias in favor of Appellee A.B.A., and therefore, the Court should reverse the lower court's orders denying the Appellant relief or remand it to the court with guidance to reconsider.

First, the Appellant qualifies for *in forma pauperis status* in the U.S District Court for the Eastern District of Virginia, Alexandria Division, and the Court should grant the status, if it has not already done so, when the Appeals Court clerk posted the Orders granting the *IFP* status in appeal cases (USCA cases 22-1934 and 22-1978) into the case file of the district court case (22-cv-947). The Appellant has no non-household assets which can be liquidated, has no savings and no income, and is living off borrowed money. Additionally, the court made no finding that any of the Appellant's claims are frivolous. The lower court's denial of *IFP* status renders Appellant unable to proceed, and since the Appellant qualifies for this status as a matter of law and fact, and the lower court abused its discretion in denying the status, the Court of Appeals should reverse the ruling.

5

Secondly, the Court abused its discretion in denying the TRO. Appellant sought the TRO to avoid incurring irreparable damage from the A.B.A. Accredited law school when it cancelled distance learning for Appellant with minimal notice. The university also refused to cooperate and act in good faith and fair dealing which required that it provide reasonable alternatives, and it is therefore in breach of the implied contract between the Appellant and the law school. The university's conduct is ███████████████████████████████████████████ ██████████████████████████ after having accepted $118,000 of tuition from Appellant, and then forcing Appellant into a leave of absence which would, absent this court's intervention, result in Appellant completing the degree behind schedule, if at all. The Appellant was on target to finish the J.D. program early and the irreparable harm continues to increase each day that passes without relief.

Third, the Court abused its discretion by denying Appellant's request for an Order to enjoin the A.B.A. and D.O.E from enforcing the arbitrary and capricious distance learning standard which is not rationally related to any governmental interest as evidenced by the fact that the whole world functioned via zoom meeting for nearly two years (including via zoom for each and every law school class across the nation), and A.B.A. accredited universities granted degrees to students having taken the very same courses Appellant was scheduled to take, under distance learning mode, before the school was effectively permitted by the lower court to breach the parties' contract for nonsensical reasons. Appellant believes that there is not one person from the A.B.A. or the D.O.E. who could stand before this court with a straight face and argue that distance learning has been ineffective throughout COVID-19 pandemic without engaging in additional fraudulent acts. Nor is it fair to understate the role of the A.B.A. accreditation process as simply an exercise of its free speech, when, in fact, the "collaborative" nature of the accreditation process, is effectively a sanctioned conspiracy, where the interests of the A.B.A. and of the schools are so aligned that they are acting in concert to

6

protect their interests to the detriment of law students and the public (notwithstanding some valid motivations including a benefit to the public). To the extent that the A.B.A. protects the public by ensuring prospective lawyers satisfy a certain quality of legal knowledge and training, it engages in fraud when it purports to do so through methods which are not rationally related to its purpose, but instead only serves to raise a barrier to entry. Incidentally, that barrier to entry disproportionately affects minorities and families with atypical situations, such as Appellant's, ███████████

████████████

███████████. So, without this court's intervention, nonsense prevails, under the guise of an "accreditation standard," which any non-interested person (i.e. non-A.B.A. member) would realize is in place simply to make legal education less accessible, particularly to a diverse population, and to protect the financial interests of those in the industry by reducing competition. The standard is not rationally related to any governmental interest, therefore D.O.E.'s authorization to allow A.B.A. to adopt such a standard is unconstitutional, as is the A.B.A. standard itself.

███████████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
██████████████████████████
██████████████████████
███████████████████████████████
███████████████████████████

7

████████████████████████████████ The sham becomes clearer when the university uses the vaccine as a pretextual tool for requiring students back on campus only for the financial benefit of the university under guise of student safety, when the school threatens to disenroll distance learning students who are not even on campus and are, in fact, in other states, if they don't report their vaccine status to the school.

Lastly, while the honorable justices of the United States District Court for the Eastern District of Virginia are, without a doubt, attempting to exercise their judgement as objectively as humanly possible, it is not possible to be both void of bias and void of the appearance of bias (a standard the court strives to achieve), when the adjudicating justice is a member of the very organization (ABA) which is being charged by Appellant with adopting unconstitutional "distance learning" standards that are substantially intended to reduce competition in the industry (both legal education industries and the legal industry as a whole). Appellant suggests that the bias or appearance of bias would be eliminated if the case were to be assigned to a non-lawyer, non-A.B.A. member judge.

For each of these reasons, the decisions of the lower court should be reversed (or the case remanded for the court to reconsider its adverse rulings. The protectionist policies of the Appellees, which are otherwise nonsensical, should be deemed unconstitutional (at least treated as such through the pendency of these proceedings), the A.B.A accredited law school should be enjoined from further breaches of its contractual obligations to engage with good faith and fair dealing, and to required cooperate with Appellant (by proposing a "graduation plan"), and the Appellant law student should be provided relief to proceed without fees, under pseudonym, with sensitive information remaining sealed, to include any other relief necessary to ensure Appellant has a reasonable opportunity (including possibly directing the university to cooperate in formulating a fair graduation

8

plan for Appellant), given the totality of the circumstances of this case, to complete the law program

as planned, a semester ahead of schedule, and be protected by the Court from any ███████

███████ fraud.

## STATEMENT OF THE CASE

*FACTS OF THE CASE*

The facts of the case are laid out in the Appellant's affidavit and are not repeated here for

purposes of efficiency given that this is an informal brief.

Appellant wishes to restate the facts as laid out in the affidavit in the lower case, in support

of the motion for TRO, as if fully set forth herein.

*PROCEDURAL HISTORY*

On August 19, 2022, a complaint was filed under the pseudonym Jane Doe alleging various

claims against an A.B.A. Accredited University, the American Bar Association, and the Department

of Education. (Docket no. 1). Along with the filing of the complaint, Appellant filed a motion to

proceed *in forma pauperis* (Docket no. 2), a motion to file complaint and proceed under a

pseudonym (Docket no. 3), a motion for a temporary restraining order (Docket no. 4), a motion for a

preliminary injunction (Docket no. 6), a motion to exceed page limitations (Docket no. 8), a motion

to file electronic documents by USB drive (Docket no. 10), and a motion for pro se electronic

noticing (Docket no. 12). On August 22, 2022, an order was entered denying the motion for a

temporary injunction and striking the memorandum in support of the preliminary injunction. (Docket

no. 14). In that Order, Appellant was instructed to file a revised memorandum that complied with the

Federal Rules of Civil Procedure and the Local Civil Rules of this Court by August 24, 2022 and to

confer with the defendants and agree on a date for a hearing on the motion for preliminary

injunction. *Id.* On August 23, 2022, an order was entered denying plaintiff's motion to proceed

*informa pauperis*. (Docket no. 15).

On August 24, 2022, Appellant withdrew the motion for a preliminary injunction (Docket no. 16) and filed a motion requesting that the Court reconsider its earlier rulings denying the motion for a temporary restraining order, striking the memorandum in support of the motion for a preliminary injunction, and denying the motion to proceed *in forma pauperis*. (Docket no. 20). On September 14, 2022, orders were entered denying plaintiff's motions for reconsideration and Appellant was instructed to resubmit the motion for preliminary injunction if Appellant intends to pursue such relief and to file the required filing fee within 14 days. (Docket nos. 27, 28). On October 6, 2022, Appellant filed a motion to vacate the September 14, 2022 Order denying the motion to proceed *in forma pauperis* or for a stay pending appeal. (Docket no. 34).

On September 1, 2022, Appellant filed a notice of appeal concerning the Orders (Docket nos. 14, 15) denying the motion for a temporary restraining order, striking the memorandum in support of the motion for a preliminary injunction, and denying the motion to proceed *in forma pauperis*. (Docket no. 24).

On September 14, 2022, the District Court granted *in forma pauperis* status to Appellant and the Clerk of that Court filed that Order in the lower court's case, Docket no. 24, stating specifically that the "court grants leave to proceed in forma pauperis. For the Court--By Direction /s/ Patricia S. Connor, Clerk." On that same day, the District Court Entered an Order summarized as follows: "ORDERED that Plaintiff's 'Emergency Motion for Reconsideration, or, in the Alternative Emergency Certification for Interlocutory Appeal' (Dkt. 20) is DENIED. It is further ORDERED that Appellant re-submit the motion for a preliminary injunction, if Appellant intends to pursue such relief, confer with Defendants, and notice a hearing for the preliminary injunction expeditiously. Signed by District Judge Patricia Tolliver Giles on 09/14/2022."

On September 15, 2022, this Court entered an informal briefing ORDER directing the Informal Opening Brief due on October 10, 2022, with Appellees directed to file any Informal response brief 14 days after any informal opening brief is served. On October 10, Appellant filed a Motion for Extension of time, which the Court granted on October 12, 2022 granting extension of time to file Opening Informal Brief until November 14, 2022.

On October 24, 2022, the Court ORDERED (Docket no. 34) that the "motion to proceed under pseudonym (Docket no. 3) is denied, the pending motions to seal (Docket nos. 18, 31, and 34) are granted, and the motions to exceed page limitations and to file documents by USB drive (Docket nos. 8, 10) are denied without prejudice. Once plaintiff's appeal has been resolved and the issue of whether a filing fee must be paid, Appellant may be required to refile the complaint and other pleadings without the use of a pseudonym." On November 9, the Appellant filed a Notice of Appeal of the Interlocutory Order denying Appellant's request to proceed under pseudonym.

**ARGUMENT**

I.  **STANDARD OF REVIEW ON APPEAL**

A. **IN FORMA PAUPERIS STATUS**

"A district court has discretion to grant or deny an *in forma pauperis* petition filed under §1915." (*Dillard v. Liberty Loan Corp.*, 626 F.2d 363, 364 (4th Cir. 1980), quoting *Graham v. Riddle*, 554 F.2d 133 (4th Cir. 1977)). This discretion, however, is limited to a determination of "the poverty and good faith of the applicant and the meritorious character of the cause in which the relief was asked." *Kinney v. Plymouth Rock Squab Co.*,

236 U.S. 43, 46, 35 S.Ct. 236, 238, 59 L.Ed. 457 (1915). "In the absence of some evident improper motive, the applicant's good faith is established by the presentation of any issue that is not plainly frivolous." *Ellis v. United States*, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

B. **TEMPORARY RESTRAINING ORDER**

11

The established rule is that denials of temporary restraining orders are ordinarily not appealable, except if it falls within an exception to the general rule, such as when denial of the temporary restraining order was tantamount to a denial of a preliminary injunction. *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, AFL-CIO, 473 U.S. 1301, 1303–04, 105 S. Ct. 3467, 3468–69, 87 L. Ed. 2d 603 (1985).

A valid ground of appealability of the order is the fact that the result of the denial of the relief sought by appellant allows the university to deny appellant access to the education for which a substantial sum of money has already been paid. Thus, Appellant's substantial rights were determined in a manner that would have rendered the federal cause of action moot, and the denial of the relief sought may be equated with a *pro tanto* dismissal of the complaint. This is the rationale of *United States v. Wood*, 5 Cir., 1961, 295 F.2d 772, 778, certiorari denied, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9; and *Woods v. Wright*, 5 Cir., 1964, 334 F.2d 369, 372-374. See also *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, where the Supreme Court approved a practical construction of § 1291.

The Fourth Circuit has stated, "Because [temporary restraining orders and] preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power, [it] should be particularly exacting in its use of the abuse of discretion standard when it reviews an order granting [injunctive relief]." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citations omitted) (internal quotation marks omitted) (alteration marks omitted). "Furthermore, when the [injunctive relief] is mandatory rather than prohibitory in nature, [the Fourth Circuit's] application of this exacting standard of review is even more searching." *Id.* (citation omitted) (internal quotation marks omitted). *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 466 (D.S.C. 2020).

12

In seeking a permanent injunction, an Appellant must satisfy a four-factor test, to demonstrate: (1) that he "has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the Appellant and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 770 (D. Md. 2015)(citing *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

The Primary purpose of preliminary injunction is to preserve status quo until merits of controversy can be fully and fairly adjudicated. *Staver v. Am. Bar Ass'n*, 169 F. Supp. 2d 1372 (M.D. Fla. 2001).

### C. DENIAL OF REQUEST TO PROCEED UNDER PSEUDONYM

"There is no dispute that as an uncertified interlocutory order it is appealable only if it falls within the familiar collateral order doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541(1949). *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

In this court's formulation, "that doctrine allows appeal of such an order only if it 'conclusively determines the question in the trial court, resolves an important question independent of the subject matter of the litigation, is effectively unreviewable on appeal from a final judgment . . ., and presents a serious and unsettled question upon appeal.' *Taylor v. Nelson*, 788 F.2d 220, 224 (4th Cir. 1986). *James* at 238.

"A decision, such as the one here, refusing to allow parties to proceed anonymously at trial is 'separable from and collateral to' the merits of the action. See *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981); *Southern Methodist Univ. Ass'n. v. Wynne Jaffe*, 599 F.2d 707 (5th Cir. 1979). It is not a step toward final judgment on the merits that will merge in and be reviewable on any appeal from that judgment (even assuming that review at that point could be effective)." *James* at 238.

13

The standard for review is the abuse of discretion standard, "a standard that, though familiar in statement, is not necessarily that simple in application." Abuse of discretion can occur in a number of ways. *See* generally Rosenburg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 655 (1971). "Perhaps its most obvious manifestation is in a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." See *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62, 98 S.Ct. 2552, 2556-57, 57 L.Ed.2d 504 (1978). Another way is by "attempting to exercise discretion, adequately to take into account judicially recognized factors constraining its exercise." See *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 938-39, 74 L.Ed.2d 765 (1983) ("discretion must be exercised under the relevant standard prescribed by this court"). Finally, discretion may be abused by an exercise that is flawed by erroneous factual or legal premises. See *Cooter Gell v. Hart marx Corp.*, 496 U.S. 384, 401-02, 110 S.Ct. 2447, 2458-59, 110 L.Ed.2d 359 (1990) (clearly erroneous factual findings or legal errors underlying discretionary fee award ruling constitutes abuse of discretion).

## II. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING IN *FORMA PAUPERIS STATUS*

The Appellant qualifies as a matter of law for *in forma pauperis* status and the district court abused its discretion in denying the status. "A district court has discretion to grant or deny an *in forma pauperis* petition filed under §1915." *Dillard v. Liberty Loan Corp.*, 626 F.2d 363, 364 (4th Cir. 1980), quoting *Graham v. Riddle*, 554 F.2d 133 (4th Cir. 1977). This discretion, however, is limited to a determination of "the poverty and good faith of the applicant and the meritorious character of the cause in which the relief was asked." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46, 35 S.Ct. 236, 238, 59 L.Ed. 457 (1915). "In the absence of some evident improper motive,

the applicant's good faith is established by the presentation of any issue that is not plainly frivolous." *Ellis v. United States*, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

Appellant has no income, no savings, and is living on borrowed money. Appellant is not acting in bad faith, and has put forth non-frivolous arguments, and has proper motives. In fact, this court properly found the Appellant to be qualified for this status on substantially similar if not identical affidavits. The Clerk of this court even filed the Order granting *in forma pauperis* status with the district court case file, but on the same day the district court ordered Appellant to pay the fees within 14-days, despite having reason (supported by a sworn affidavit) to know, without finding it to be a "fact," that Appellant could not.

### III.  THE LOWER COURT ABUSED ITS DISCRETION IN DENYING THE TEMPORARY RESTRAINING ORDER

The lower court abused its discretion when it denied Appellant's Motion for a Temporary restraining order. In seeking a permanent injunction, a Appellant must satisfy a four-factor test, to demonstrate: (1) that he "has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the Appellant and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 770 (D. Md. 2015)(citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

In *Doe v. The Rector & Visitors of George Mason Univ.*, the Court acknowledges as a matter of law, in facts substantially similar to the instant case, that when a student is wrongfully denied access to an education, "there can be no doubt that plaintiff has suffered an irreparable injury and that he has no adequate remedy at law, [when] defendants' unconstitutional conduct deprived plaintiff of three semesters of education at GMU, thereby delaying plaintiff's graduation from that

institution. The clock cannot be turned back to …. to allow plaintiff to resume his course of study on his preferred schedule. Instead, plaintiff will complete his education at GMU, if at all, several months or years behind the majority of his peers with whom he matriculated."

*Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 587 (E.D. Va. 2016).

In a separate case, *Betts v. Rector & Visitors of Univ. of Virginia*, the court adopted a view by the Second Circuit, when it acknowledged that in contrast to merely "a one-year delay in obtaining admission to a graduate school for the purpose of pursuing professional studies" which did not qualify for injunctive relief, an " interruption or termination of attendance already in progress", was sufficient to warrant an injunction "in the absence of other circumstances militating in favor of such relief." *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981) (citations omitted). *Betts v. Rector & Visitors of Univ. of Virginia*, 939 F. Supp. 461, 465 (W.D. Va. 1996).

As is the case here, Appellant will sustain an interruption or termination of attendance already in progress, and by virtue of these facts alone, as a matter of law, Appellant satisfies the prongs of the test for irreparable harm and that remedies at law such as monetary damages are inadequate to fully compensate for that injury. Additionally, considering the balance of hardships between the Appellant and Appellees, where Appellant is suffering from a loss of access to Appellant's education program, and the loss of Federal Student Aid from which Appellant planned to have as living expenses was no longer available to Appellant as a result of the university's tortious actions, causing Appellant to beg and borrow, and the hardship is clear and severe. Whereas, conversely, the hardship on the Appellee university to continue distance learning for Appellant as a legal duty under the parties' contract, ███████████████████████████████ ███████ and to cooperate and act in good faith and fair dealings▌, or as a legal duty to refrain from fraudulent activities, is no hardship. Similarly, as against the A.B.A. and D.O.E., restricting them

from enforcing or allow for the enforcement of an unconstitutional distance learning standard or an arbitrary and capricious distance learning restriction would hardly cause a hardship for these organizations. Lastly, the public interest would not be disserved by a permanent injunction, as allowing one more law student (Appellant) to study substantially the same classes as all law students studied via distance learning during the pandemic for credit to be applied to the A.B.A accredited law J.D. degree can in no way be seen as a disservice to the public.







[1] A.B.A. Standards and Rules of Procedure for Approval of Law Schools 2022-2023





██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████

Notwithstanding that caveat, because the A.B.A. has not published any justification or rationale for its distance learning standards, and has not provided any response to plaintiff's numerous requests for its rationale, the Court should draw an inference for the purpose of the TRO that the distance learning standard is arbitrary and capricious and subject to be overruled for constitutional grounds.

Similarly, because the University has not engaged in interactive dialogue with the Appellant regarding Appellant's numerous accommodation requests (including the request to continue distance learning), and it has not provided any explanation as to why it cancelled distance learning, ████████ ███████████████████████████████ the court should find that the Appellant is entitled to the requested temporary relief. Appellant has put forth sufficient facts to support an inference that the university is acting in bad faith and refusing to cooperate.

Aldo, given the university's conduct of refusing to cooperate and provide any information regarding alternative options for Appellant to have proceeded in the program for Fall 2022, especially under the published "visiting student" or "externship" opportunities, for which Appellant repeatedly sought clarifications as to any opportunities within those published standards, inter alia, the court should accept as fact that the university is acting in bad-faith and grant the TRO.

**IV. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING PERMISSION TO PROCEED UNDER PSEUDONYM AND BY INDICATING THAT SEALED DOCUMENTS MAY BE UNSEALED UPON FURTHER FUTURE REVIEW**

The District Court abused its discretion in denying Appellant the right to proceed under pseudonym and by informing Appellant that Sealed Documents may be unsealed upon further future review. "The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion. This implies, among other things, that though the general presumption of openness of judicial proceedings applies to party anonymity as a limited form of closure, see Stegall, 653 F.2d at 185, it operates only as a presumption and not as an absolute, unreviewable license to deny. The rule rather is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *James v. Jacobson*, 6 F.3d 233,238 (4th Cir. 1993).

"As is ordinarily the case where discretion is committed to trial courts, some guidelines for its exercise in the form of factors that should be considered by courts considering anonymity requests have been judicially recognized. They are not many, for the question happily is one that is not too often raised. But some can be gleaned from the relatively few cases — both at trial and appellate levels — that have wrestled with the problem. Among them are the following that have relevance to this case: whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed

23

anonymously. See *Doe v. A Corp.*, 709 F.2d 1043, 1044 n. 1 (5th Cir.1983) (anonymity of both parties warranted to protect attorney client confidentiality privilege); *Doe v. Stegall*, 653 F.2d at 185-86 (anonymity warranted to protect minor plaintiffs against risk of violence from revelation of unpopular personal beliefs); *Southern Methodist Univ. Assn.*, 599 F.2d at 712-13 (anonymity properly denied to Title VII claimants who sought only to protect against possible economic retaliation and identified no threat to any "highly private matter" that outweighed risk of unfairness to defendant-employee); *Candy H. v. Redemption Ranch*, 563 F.Supp. 505 (M.D.Ala.1983) (anonymity allowed in suit by pregnant 19-year old alleging fraudulent inducement to enter defendant's Home for Girls); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (anonymity allowed because of sensitive privacy and retaliation concerns in suit by homosexual against insurance company alleging discriminatory practices; no unfairness to defendant who was aware of claimant's true identity); Doe v. Hallock, 119 F.R.D. 640 (S.D.Miss.1987) (anonymity not warranted in sexual discrimination and harassment suit against private parties where no privacy interest beyond personal embarrassment identified)." *James v. Jacobson*, 6 F.3d 233,238 (4th Cir. 1993).

"Here, as generally, the judicial recognition of such factors as guides to a proper exercise of discretion operates to impose legal constraints on its exercise by trial courts and in turn to guide our review." *James v. Jacobson*, 6 F.3d 233,238 (4th Cir. 1993).

> *The review is subject to the abuse of discretion standard, "a standard that, though familiar in statement, is not necessarily that simple in application." James at 238. For "abuse of discretion", as courts and commentators have come increasingly to recognize (and confess), can occur in a number of ways. See generally Rosenburg, Judicial Discretion of the Trial Court, Viewed From Above, 22 Syracuse L.Rev. 635, 655 (1971). Perhaps its most obvious manifestation is in a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion. See Will v. Calvert Fire Ins. Co., 437 U.S. 655, 661-62, 98 S.Ct. 2552, 2556-57, 57 L.Ed.2d 504 (1978). Another way, crucial here, is by failure, in attempting to exercise discretion, adequately to take into account judicially recognized factors constraining its exercise. See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938-39, 74 L.Ed.2d 765 (1983) ("discretion must be exercised under the*

24

*relevant standard prescribed by this court"). Finally, discretion may be abused by an exercise that is flawed by erroneous factual or legal premises. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401-02, 110 S.Ct. 2447, 2458-59, 110 L.Ed.2d 359 (1990) (clearly erroneous factual findings or legal errors underlying discretionary fee award ruling constitutes abuse of discretion).*

Here, Appellant argues that there are several ways in which the order denying Appellant leave to proceed under pseudonym and by leaving open the possibility that sensitive information will be unsealed at a later date, fails to pass muster as a proper exercise of the discretion committed.

A principal concern raised by the record is whether the ruling actually reflected a true exercise of discretion or was instead based essentially upon the court's conviction that party or witness anonymity at trial in this type case is never permissible. Appellant argues that the Order indicates that the court avoided a truly discretionary choice. Although the court knew that, technically, the ruling was one committed to its discretion, with all that that implies for making reasoned choice based upon factors specific to the case, and it is clear that the court looked at the problem both from the plaintiffs' and the defendants' viewpoints, suggesting a balancing process, we are left with the impression that its conclusion was based upon a general rather than a particularized assessment of the equities involved: that as a general proposition party-anonymity at trial is simply not permissible ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25



Just as in *Jacobsen*, here, the court's original ruling leaves us to conclude from the record that the district court so continuously misapprehended the nature of the Appellant's claims — particularly as it defined the harms for which Appellant seeks relief — that the court's judgment about the threat of unfairness to the defendant posed by anonymity is critically flawed. "As indicated in our general ruminations about the anatomy of trial court discretion, such misapprehensions of factual and legal predicates can lead to flawed rulings in matters of discretion, and we think this is one such." *James v. Jacobson*, 6 F.3d 233,238 (4th Cir. 1993).

It can't be said that the trial court didn't exercise any discretion at all. Although there are plain indications that the judge did address the conflicting interests of the parties involved before entering the challenged order, a fairer view of the trial court's decisional process is that discretion was being exercised, with alternatives being actually considered, but that it is clear that the principal factor counselling against anonymity for the district court was its failure to find the real risk of retaliatory harm, and a finding of risk of any unfairness to the defendant. Two principal concerns of the court are expressed on the record. The first was that "There is no evidence that plaintiff or defendant A.B.A. Accredited University faces a risk of retaliatory physical or mental harm." Secondly the court found that "This action is against a University, the American Bar Association, and the Department of Education and they could face substantial unfairness in having to proceed in this action anonymously.

These concerns about prejudice to the defendant was the only case-specific factor considered by the court to warrant its ruling against anonymity. And it was this concern that prevailed with the court when weighed in the balance against the countervailing risk of harm to the Appellant from

revelation of identity. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████

Here, the court should conclude that the district court either failed actually to exercise discretion, ruling instead on the basis of general disapproval of party anonymity at trial, or to have acted on the basis of legal-factual misapprehension as to the factor on which it seemed mainly to rely — prejudice to the defendant. ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████ This obviously should not lightly be done. Here, the court should be sufficiently concerned that in a proper exercise of discretion it possibly should not have been done, and the court should find itself constrained to vacate the district court's order as, on a fair reading of the record, an abuse of discretion.

In this respect, the court should vacate the order and remand with directions to reconsider in light of the potential risk of retaliation and the fairness to the defendants that they know the actual identity of the Appellant. Doing so would indicate the Court's confidence in this district court's

28

capacity and willingness to engage in a true reconsideration that accepts and takes into account the specific concerns with the decision under review based on this court's findings related to the error in discretion, and also, it would demonstrate the recognition that the trial court has a superior vantage point in making this sort of discretionary decision respecting the conduct of trials — whether originally or even following appellate review and correction.



---

[2] American Bar Association Endorsement of the Appointment of the Federal Judge presiding over this case creates an appearance of bias, which can be further inferred by the adverse rulings to date in this case which have been contrary to law and fact.
https://www.americanbar.org/content/dam/aba/administrative/government_affairs_office/webratingchart-117.pdf

[3] See https://www.lexico.com/en/definition/bias (as of June 6, 2020).

**CONCLUSION**

The Appellant seeks a reversal of the district court orders denying *in forma pauperis* status,

denying TRO relief,  denying the request to proceed under pseudonym ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████.

Respectfully submitted,

*[signature]*

Jane Doe, *pro se*